[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife initiated this dissolution action seeking a decree dissolving the marriage, custody of the minor children and other financial orders. At the time of filing her complaint, the plaintiff alleged a pending pregnancy setting forth "an anticipated delivery date of March 1990." The third child of the parties was born on February 28, 1990. The plaintiff thereafter sought permission from the court to file an amendment to her complaint to add the name and date of the third child which was granted. The plaintiff's complaint is in two counts with the basic difference being that count one alleges as the ground for dissolution the irretrievable breakdown of the marriage, and the second count charges the defendant with being guilty of adultery and alleges this conduct as the cause of the breakdown. In his answer, the defendant admits all the allegations of count one of the complaint and denies the allegation of adultery in the second count. In his cross CT Page 1890 complaint he alleges the irretrievable breakdown of the marriage and makes claims for relief similar to the plaintiff.
Originally, the defendant was represented by counsel. Prior to the present hearing on the merits, defense counsel requested permission to withdraw. Permission was granted when the defendant stated that he was in agreement and that he would represent himself.
On the basis of the pleadings and the testimony presented at the hearing, the following findings and conclusions are made.
1. The parties married on June 25, 1977 at Wantagh, New York.
2. The parties have both resided continuously within the State of Connecticut for more than one year prior to August 1, 1989, the date of the filing of the complaint in the court.
3. The marriage of the parties has broken down irretrievably with no reasonable prospect of a reconciliation.
4. There are three minor children who are lawful issue of this marriage. Their names and dates of birth are as follows: Kimberly Levy born January 2, 1978, Robert Alexander Levy born August 12, 1980, and Regina Levy born February 28, 1990.
5. Neither the State nor any political subdivision thereof has any financial interest in the outcome of these proceedings as a result of having ever provided any aid to the parties.
6. The defendant committed acts of adultery prior to the filing of the complaint which was also the major cause of the breakdown of the marriage. In addition, the defendant committed acts of violence upon the plaintiff which added to the plaintiff's grief and helped to break up the marriage. Finally, additional cause came from the defendant's lies as they related to his latest extramarital relationship. There had been at least one earlier one which had come to the plaintiff's attention laying the foundation for her distrust of him. The plaintiff had also started an earlier dissolution action which she withdrew in the hope of once again salvaging the marriage. His early return from a trip to Europe without correcting the date of arrival with the plaintiff was another severe blow to the plaintiff, when she learned he had done so in order that he might spend the night before returning home at the residence of his paramour. I believe that the adulterous relationship is established by a fair preponderance of the evidence. Here, I do not regard the defendant's testimony as credible. I have CT Page 1891 read the Supreme Court's decision in Turgeon v. Turgeon,190 Conn. 269, 278, 279 (1983) and have weighed the words of admonition, but I believe the testimony in this case meets the concluding language on page 278, "`. . . nor, on the other hand, should it (the court) refuse to reach that conclusion (adultery) which the sound and unprejudiced judgment should lead to.'" (Parentheses supplied).
7. The plaintiff has been the principal caretaker of all the children in this family. The parties do not agree generally and the defendant is at this time especially hostile towards the plaintiff. This disagreeing and open hostility on the part of the defendant means that it will create unnecessary delays which will not be in the best interests of the children.
8. The plaintiff has her parents residing in Florida. The defendant's parents are deceased. The defendant believes strongly that the plaintiff will be moving to Florida with the children. This has not been stated by the plaintiff. Here again joint custody would not be in the best interests of the children, if the move took place. The undersigned has now been informed that the plaintiff has gone to Florida with the children.
9. The plaintiff was born on June 16, 1956 and the defendant on July 10, 1954. Both are high school graduates. The plaintiff has an associate's degree in nursing. The defendant did take a number of courses of study during his employment at Smith Corona Corp. The defendant served initially a four year apprenticeship as a tool and die maker. He was employed at Waterman-Bic Pen Corp. from November 1, 1982 to November 1, 1989. His three years of highest earnings at this employer were 1986, $45,313, 1987, $48,585 and 1988, $51,905. During this period of three years the plaintiff had earnings of approximately $6,100, $10,000, $17,000 and in 1989 filing separately she earned $16,875. (See Exhibits G-1, 2 and 3, H and N). After Bic Corp. employment, the defendant went to work at Placo Molders until February of 1990 when he was laid off. At the time of the hearing the defendant had not been able to secure further employment since February 1990, although he testified to making some efforts in that regard.
Both of these parties are in relatively good health. The defendant should be able to secure the employment he is qualified for and when he does he will earn substantially more than the plaintiff. The plaintiff's working time will for a long time be limited by her responsibility to care for the three children. In spite of his protestations to the contrary, I find that the defendant will not be a significant factor in the rearing of these children. There was testimony by the plaintiff CT Page 1892 that at one time the defendant assisted his son in his sport activities and that now this assistance was gone so that the plaintiff had to move in. Further in this area, the interview by the family relations officer of the child as set forth on page 11 of her report (Exhibit O) supports the above conclusion. There is further support in the interview with Kimberly and in the reports received by the officer from Dr. Gerwirtz relating statements of the children. (Exhibit O, pp. 12, 13).
10. The defendant is presently residing with a widow who has a seventeen year old daughter. He was her supervisor when working at BIC Corp. When he separated from his wife, he moved into her home. He has resided in this home continuously from the date of the separation to the hearings in this case. He testified that he has borrowed various sums of money from the widow to meet his obligations ordered by the court in its pendente lite orders.
11. The plaintiff and the three children have been residing in the family home. However, the parties have a closing pending this month for the sale of the premises.
12. A boat was purchased by the parties. It has since been repossessed when the payments could not be met. There is outstanding a debt against the parties resulting from a deficiency after the boat was sold. The defendant's attempts to blame the plaintiff for this catastrophe are not credible. There is no proof that refinancing would have brought about a better result. The boat was primarily the defendant's project. He originally bought a smaller boat but convinced the plaintiff that they could afford a large boat before hey took possess on of the smaller one. He made the major use of the boat and became unable to keep up the payments.
Before entering the Orders of the Court, I wish to state that I have considered the provisions of Connecticut General Statutes 46b-56, 62, 81, 82 and 46b-84.
Accordingly, the following orders are entered:
1. A decree may enter dissolving the marriage on the ground of irretrievable breakdown. See Venuti v. Venuti,185 Conn. 156, 157 (1981).
2. The defendant is ordered to pay to the plaintiff One Dollar ($1.00) per year periodic alimony to December 31, 2008; and this order shall not be modifiable to extend beyond December 31, 2008. However, the payments of alimony shall terminate upon the happening of the first of the following events: death of either party, remarriage of the plaintiff and her cohabitation CT Page 1893 pursuant to statute.
3. The plaintiff is awarded sole custody of the three children with reasonable rights of visitation granted to the defendant with a certain amount of specification as now set forth, based on the presence of the children in Florida:
a. The children Kimberly and Robert shall spend a three week period, during their summer vacations each year, with their father, if he shall request such a visitation. The request shall be made in writing not later than forty-five days before the first day of the visit by letter from the defendant to the plaintiff which shall be sent certified mail, return receipt requested.
b. The plaintiff will forward within 48 hours to the defendant the current address of the children and telephone number. In addition the children will be permitted to receive all mail and telephone calls from the defendant.
c. Whenever the defendant is in the state wherein the children reside he shall have reasonable rights of visitation with his children provided he gives a minimum of forty-eight hours of notice prior to the time he requests to visit with the children. The visitation with the two older children will be unsupervised. Visitation with Regina will be supervised until the child is three years old. Visitation outside her state of residence for Regina shall not take place prior to her fifth birthday.
d. The plaintiff and the defendant shall defray the transportation costs for the out of state visitations by the two older children. The defendant shall secure the tickets and forward the same to the plaintiff who will in turn immediately forward to the defendant one-third the cost of such ticket. Until further order of the court, this arrangement will also apply to the child, Regina, after her fifth birthday.
e. The parties may add to the specific visitation provisions herein set forth by mutual agreement.
f. When the children are visiting with the defendant in his home state, he will not be obligated to make a weekly support payment for a complete week spent with him. The week shall start on the date of arrival, if the children arrive at the airport before twelve noon and the date of departure shall also be included, if they depart three o'clock p. m. or later. Tickets shall not provide for departures before nine o'clock a.m. or after five o'clock p. m. CT Page 1894
g. The children shall be permitted to make one telephone call weekly to the defendant which shall be of no more than five minutes duration and shall be shared equally by Kimberly and Robert. After age three, an additional minute shall be added for Regina. These calls shall be at the plaintiff's expense. The defendant shall make his own calls to the children at reasonable hours which shall not be limited as to time and shall be at his expense. No person shall listen to or interfere in any way with such telephone calls.
4. The defendant shall pay to the plaintiff as child support for the minor children forty percent (40%) of his disposable income as defined in the Connecticut Child Support Guidelines but not less than Fifty Dollars ($50.00) per child for a total of not less than One Hundred Fifty Dollars ($150.00) total per week. Support for each child shall terminate upon such child's eighteenth birthday or the emancipation of the child or the death of such child or if he or she shall no longer live with the mother, whichever event shall first occur.
All support payments shall be by direct wage execution. The defendant shall, within twenty-four hours after he obtains employment notify the plaintiff by certified mail, return receipt requested, giving her the name and address of the employer. He shall in the same manner notify her of subsequent changes in employment.
5. a. Both parties shall maintain health insurance on the three minor children so long as the same shall be available to each of the parties through their place of employment. Until the defendant is able to obtain such insurance, he shall reimburse the plaintiff for one-half of any premium cost attributable to the children. He shall also reimburse the plaintiff for one-half the cost of any uncovered or unreimbursed medical and dental expenses. Payment upon any premium costs shall commence March 1, 1991.
b. When the defendant shall obtain medical insurance coverage, the better form of coverage between the parties shall be the primary coverage for the purpose of submitting claims seeking reimbursement. The coverage of the other party shall be secondary. The parties shall again share equally all uncovered or unreimbursed medical, dental, hospital, prescription, psychiatric, psychological, ophthalmologic, orthodontic, periodontic and counselling expenses. However, plaintiff shall not incur, except in real emergencies, any extraordinary medical or dental expenses for the children without the prior approval of the defendant. The defendant shall not unreasonably withhold such permission. Extraordinary expenses shall include those relating to any of the following: surgery, psychiatry, CT Page 1895 psychology, ophthalmology, orthodenture and periodenture.
c. If neither party, at any time, shall be unable to secure such medical coverage for the children through his or her employment because of employment without such benefit or lack of employment, the defendant shall obtain such medical coverage for the children. The premium cost shall be defrayed two-thirds by the defendant and one-third by the plaintiff. Unreimbursed or uncovered costs shall be shared equally.
d. The provisions of Connecticut General Statutes46b-84 (c) shall apply to these orders for medical insurance.
6. a. The plaintiff set forth on her financial affidavit a life insurance policy with SMH company in the face amount of $50,000. She shall maintain said policy with the three children designated as equal primary beneficiaries and such designation shall be irrevocable until the youngest child reaches her eighteenth birthday.
b. The defendant sets forth on his affidavit a life insurance policy with S.N.A. company in the face amount of $100,000. He also shows a loan against the proceeds of said policy of $4264.38. First, the defendant shall maintain said policy with the three children designated as equal primary beneficiaries and such designation shall be irrevocable until the youngest child reaches her eighteenth birthday. The defendant shall not borrow any additional sums on his policy after receiving notice of this order and shall diligently endeavor to discharge any existing loan against said policy which shall not be longer than March 1, 1992.
c. Each party shall designate the other as Trustee for the minor children until the youngest child reaches the age of majority. Each party shall submit proof of the existence of such policy and the policy shall include notice of the cancellation to the party who is not the insured. Prior to such cancellation, however, the party whose policy shall be cancelled shall give the other party at least fourteen days notice prior to the pending or proposed cancellation to permit the other party to take steps to keep such policy in force.
7. The court finds that the interest of the defendant, Robert A. Levy, in the BIC Corporation Employees Pension Plan is a marital asset subject to assignment pursuant to 46b-81 of the Connecticut General Statutes. The plaintiff shall be paid one-third of the amount payable to the defendant under said plan. Payment shall be made to the plaintiff when the defendant reaches 65 years of age or whenever he elects to receive his payments of his two-thirds in said Pension Plan, whichever is CT Page 1896 earlier. Counsel for the plaintiff is requested to draft an appropriate qualified domestic relations order; and the plaintiff may select the method of payment to her from the options available.
8. a. For the year 1990 the plaintiff shall claim Kimberly and Regina as dependents for the purpose of claiming them on her federal income tax returns for 1990. The defendant shall claim Robert Alexander for such purpose.
b. If the defendant shall make the payments ordered for the support of the children in this decision, he shall claim Kimberly and Robert Alexander as dependents for the purpose of claiming them on his federal income tax return for 1991 and for succeeding years until further order of the court. The plaintiff shall likewise claim Regina during such years.
9. a. The marital residence located at 142 Greenbriar Road in Meriden, Connecticut is to be sold and the net proceeds from the sale of said premises shall be divided equally between the parties. The net proceeds shall be determined by deducting from the gross selling price, a) all costs related to the sale of the property; b) the mortgage principal and interest plus late charges and other penalties, costs, fees and any other charges connected with any foreclosure suit on said property; unpaid real estate taxes; and any unpaid insurance premiums.
b. The net proceeds shall be placed in an escrow account unless payment of certain obligations that will hereinafter be set forth and ordered paid out of the net proceeds is made. When those payments have been made, the balance, if any in each share, may be distributed to each of the parties.
10. The defendant's financial affidavit sets forth a debt to the Chemical Bank of New York in the amount of $16,024.30. The defendant testified that this sum represents the amount due on the purchase price of the boat which was repossessed and sold. It is found that this obligation is the sole obligation of the defendant and should be paid by him.
Accordingly, it is ordered that the exact amount due the bank at the time of the closing be ascertained and payment be made by the closing attorney to the bank out of the defendant's share of the net proceeds from the sale of the marital premises.
11. The plaintiff lists a number of liabilities on her financial affidavit of October 22, 1990. She is ordered to pay the following four liabilities so that the defendant shall be CT Page 1897 saved harmless therefrom. Therefore, it is ordered that the amount presently owed on said four liabilities shall be paid out of her net proceeds from the sale of the residence. Said four liabilities are: First Omni, J. C. Penney, Manufacturer's Hanover and Household Finance or Household Credit Services.
12. Any outstanding liabilities to Dr. Helm, Dr. Gewirtz, Dr. Kim and the St. Stanislaus School shall be paid for equally by the parties and the payments shall be made out of the respective shares of the net proceeds from the sale of the family house.
13. Except as hereinbefore specifically provided and as may hereinafter be provided the parties shall each be responsible for the remaining liabilities set forth on the latest financial affidavit filed with the court and shall save the other party harmless from any such.
14. The 1987 Chevrolet van is awarded to the plaintiff as her sole property and she shall hold the defendant harmless from any liability therefrom.
The defendant's request for reimbursement of insurance premiums and additional charges as set forth in "Defendant's Proposed Orders" submitted in court on November 20, 1990 and found in paragraph 5.d. is denied.
15. If still available at the house so that the same may be taken out; and if the same have not been sold by the parties to the new owners, the defendant is awarded as his sole property the items listed on his "Proposed Orders" supra, in paragraphs 5e, 5j, k, l, m, n, q, but not including any of the following: Sears ping pong table, Hoover upright vacuum cleaner or the $1500., u, v. All other personal property is awarded to the plaintiff as her sole property.
16. The defendant is ordered to pay to the plaintiff on account of her attorney's fees the sum of One Thousand Six Hundred and Fifty ($1650.00) Dollars. This sum shall be paid at the closing on the marital house out of the defendant's share of the net proceeds, if the same shall be sufficient. If the amount cannot be paid out of said net proceeds, the defendant shall pay the full sum or any remaining balance in two equal payments, one-half within six months of the date of this memorandum and the balance within six months thereafter.
17. The defendant is ordered to pay all arrears due on pendente lits orders of the court up to and including February 22, 1991. The arrearage through November 2, 1990 is found to be $1,047. On the assumption that the defendant has continued to CT Page 1898 be deficient at the rate of $24.00 per week, I have calculated an additional fifteen weeks to and including February 22, 1991 which adds $360. for a new total of $1,407. It is ordered that this sum be paid to the plaintiff out of the net proceeds share above of the defendant, if there is any remaining after payment of counsel fees as ordered. Any sum not so paid shall be reduced to zero by the defendant by making $10.00 payments each week commencing with the first payment on March 1, 1991 and every Friday thereafter.
I believe I have covered all the matters directed to the court's attention in their respective written claims for relief.
Plaintiff's counsel shall prepare a judgment file for approval by the undersigned, submitting a copy to the defendant for appropriate comments, if in disagreement over the contents of the same.
John Ottaviano, Jr. State Trial Referee